**United States District Court**
For the Northern District of California

1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

8                                    ) Case No. C 12-4350 SC
9                                    )
   SWINERTON BUILDERS and SWINERTON ) ORDER COMPELLING ARBITRATION,
10  INCORPORATED,                    ) STAYING CASE PENDING
                                     ) ARBITRATION, AND GRANTING IN
11            Plaintiffs,            ) PART DEFENDANTS' MOTION TO
                                     ) DISMISS
12      v.                           )
                                     )
13  AMERICAN HOME ASSURANCE CO.;     )
    NATIONAL UNION FIRE INSURANCE    )
14  CO. OF PITTSBURGH, PA; and DOES  )
    1-250, inclusive,                )
15                                   )
              Defendants.            )
16  _____)

17

18

19  I.   **INTRODUCTION**

20        This is an insurance dispute.  Now before the Court is

21  Defendants American Home Assurance Co. ("American Home") and

22  National Union Fire Insurance Co.'s ("National") (collectively

23  "Defendants") motion to dismiss or, alternatively, to compel

24  arbitration of Plaintiffs Swinerton Builders and Swinerton

25  Incorporation's (collectively "Plaintiffs") complaint.  ECF Nos. 9

26  ("FAC"), 33 ("Mot.").  The motion is fully briefed.  ECF Nos. 39

27  ("Opp'n"), 40 ("Reply").  The Court finds the motion suitable for

28  decision without oral argument.  Civ. L.R. 7-1(b).  As explained

**United States District Court**
For the Northern District of California

1  below, the Court GRANTS Defendants' motion to compel arbitration

2  and STAYS this case pending the completion of arbitration.  The

3  Court also GRANTS in part Defendants' motion to dismiss Plaintiffs'

4  complaint.

5

6  **II.    BACKGROUND**

7       Plaintiffs were the general contractors for the construction

8  and subsequent renovation of a residential development in Marina

9  del Rey, California (the "Project").  FAC ¶ 18.  Defendants issued

10 two insurance policies (collectively the "Policies") that covered

11 the Project during the time relevant to Plaintiffs' complaint.  Id.

12 ¶¶ 13-17.  The first, issued by American Home, was a Commercial

13 General Liability Policy effective March 31, 2002 to March 31,

14 2003.  Id. ¶ 13; id. Ex. A ("CGL Policy").  The second, issued by

15 National, was a Commercial Umbrella Policy effective March 31, 2000

16 to March 31, 2005.  Id. ¶ 16; id. Ex. B ("Umbrella Policy").  The

17 CGL Policy required American Home to defend and indemnify

18 Plaintiffs for property damage arising out of operations at the

19 Project.  Id. ¶ 14.  Plaintiffs paid $363,800 in premiums under the

20 CGL Policy.  Id. ¶ 15.  Plaintiffs allege that they satisfied the

21 CGL Policy's $100,000 deductible.  Id.  The Umbrella Policy

22 required National to defend and indemnify Plaintiffs for property

23 damage arising out of operations at the Project after exhaustion of

24 the underlying CGL Policy.  Id. ¶ 17.

25      In December 2008, the Homeowners Association for the Project

26 (the "HOA") sent Plaintiffs a "Notice to Builder" under California

27 Civil Code section 1375 (a "Calderon Notice"), identifying various

28 defects in the Project's waterproofing membrane, balcony railings,

**United States District Court**
For the Northern District of California

and concrete foundations.  Id. ¶ 19.  Plaintiffs gave American Home
notice of the claim under the Policies.  Id. ¶ 20.  On February 9,
2009, in response to the Calderon Notice, American Home appointed
defense counsel for Plaintiffs, and in reliance on this
appointment, Plaintiffs did not obtain personal defense counsel,
undertake any repairs at the Project, or settle with the HOA.  Id.
¶ 21.  In the following years, over various times, the Project was
subject to site inspections and forensic testing in order to
provide American Home with information about the Project's various
defects.  Id. ¶¶ 22-24.  After these tests, two mediations were
held, at which American Home refused to settle claims against
Plaintiffs.  Id. ¶¶ 25-26.

     The HOA sued Plaintiffs on May 3, 2011, for construction
defects (the "underlying case").  FAC Ex. D.  Two more mediations
followed Plaintiffs' filing suit, but the parties reached no
settlement, even though Plaintiffs allege that at the fourth
mediation, on August 15, 2012, the HOA made reasonable settlement
demands within the combined policy limits of Defendants' Policies.
Id. ¶¶ 28-29.  Though they refused the various settlement offers,
Defendants are defending Plaintiffs in the HOA's lawsuit.  Id. ¶¶
27-32.  Plaintiffs allege that Defendants had a duty to settle the
underlying case, and that Plaintiffs have overpaid their $100,000
deductible for the Project.  See id. ¶¶ 40-48.

     Based on these allegations, Plaintiffs assert three causes of
action against Defendants: (1) breach of contract - failure to
settle; (2) breach of the implied covenant of good faith and fair
dealing - failure to settle; and (3) declaratory relief.  Id. ¶¶
40-65.  Defendants respond that Plaintiffs' claims are not ripe for

1   adjudication, because the underlying action is not yet resolved.

2   See Mot. at 1-2.  Defendants add that even if the Court finds that

3   Plaintiffs' claims based on their alleged overpayment of the

4   deductible are ripe, the Court should compel arbitration of those

5   claims and stay this case pending the outcome of arbitration.  Id.

6   at 2.  The parties have a separate but practically identical case

7   still pending before this Court.  Swinerton Builders v. American

8   Home Assurance Co., No. 12-cv-6047 EMC (the "Essex Case," named

9   after the underlying property in that case).  The Essex Case

10   involved a separate construction defect claim.  In that case, this

11   Court sent Plaintiffs' deductible-related claims to arbitration,

12   dismissed the remaining claims, and stayed the case pending

13   arbitration.  Swinerton Builders, 2013 WL 1122022, at *2 (N.D. Cal.

14   Mar. 15, 2013) (dismissing claims); Swinerton Builders, 2013 WL

15   2237885, at *7 (N.D. Cal. May 21, 2013) (compelling arbitration).

16

17   **III.   LEGAL STANDARDS**

18          **A.   Motions to Dismiss**

19          A motion to dismiss under Federal Rule of Civil Procedure

20   12(b)(6) "tests the legal sufficiency of a claim."  Navarro v.

21   Block, 250 F.3d 729, 732 (9th Cir. 2001).  "Dismissal can be based

22   on the lack of a cognizable legal theory or the absence of

23   sufficient facts alleged under a cognizable legal theory."

24   Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.

25   1988).  "When there are well-pleaded factual allegations, a court

26   should assume their veracity and then determine whether they

27   plausibly give rise to an entitlement to relief."  Ashcroft v.

28   Iqbal, 556 U.S. 662, 679 (2009).  However, "the tenet that a court

**United States District Court**
For the Northern District of California

1  must accept as true all of the allegations contained in a complaint

2  is inapplicable to legal conclusions.  Threadbare recitals of the

3  elements of a cause of action, supported by mere conclusory

4  statements, do not suffice." Id. at 678 (citing Bell Atl. Corp. v.

5  Twombly, 550 U.S. 544, 555 (2007)).  The allegations made in a

6  complaint must be both "sufficiently detailed to give fair notice

7  to the opposing party of the nature of the claim so that the party

8  may effectively defend against it" and "sufficiently plausible"

9  such that "it is not unfair to require the opposing party to be

10  subjected to the expense of discovery." Starr v. Baca, 652 F.3d

11  1202, 1216 (9th Cir. 2011).

12      **B.   Arbitration**

13      Section 4 of the Federal Arbitration Act ("FAA") permits "a

14  party aggrieved by the alleged failure, neglect, or refusal of

15  another to arbitrate under a written agreement for arbitration [to]

16  petition any United States district court . . . for any order

17  directing that . . . arbitration proceed in the manner provided for

18  in [the arbitration] agreement." 9 U.S.C. § 4.  The FAA embodies a

19  policy that generally favors arbitration agreements. Moses H. Cone

20  Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).

21  Importantly, however, "[A]rbitration is a matter of contract and a

22  party cannot be required to submit to arbitration any dispute which

23  he has not agreed so to submit." United Steelworkers v. Warrior &

24  Gulf Navigation Co., 363 U.S. 574, 582 (1960).  If such an

25  arbitration agreement is present, though, federal courts must

26  enforce it rigorously. See Hall Street Assoc., L.L.C. v. Mattel,

27  Inc., 552 U.S. 576, 581 (2008).  Courts must also resolve any

28  "ambiguities as to the scope of the arbitration clause itself . . .

**United States District Court**
For the Northern District of California

1 in favor of arbitration." <u>Volt Info. Scis., Inc. v. Bd. of Trs. of</u>

2 <u>Leland Stanford Jr. Univ.</u>, 489 U.S. 468, 476 (1989).

3

4 **IV.   DISCUSSION**

5     **A.   Plaintiffs' Unripe Claims**

6     The core of Plaintiffs' three causes of action is their

7 allegation that Defendants breached both their contract and the

8 implied covenant of good faith and fair dealing by refusing to

9 settle the claims in the underlying case.  Defendants argue that

10 all of Plaintiffs' claims are premature, because Defendants are

11 defending Plaintiffs in the ongoing underlying case.  Defendants

12 are right.  Plaintiffs' claims based on Defendants' failure to

13 provide funding or authority to settle the underlying case are

14 unripe and must be dismissed.

15     "[A] claimant's action against the insurer [for breach of the

16 duty to settle] does not mature until a judgment in excess of the

17 policy limits has been entered against the insured." <u>Hamilton v.</u>

18 <u>Maryland Cas. Co.</u>, 27 Cal. 4th 718, 725 (Cal. Ct. App. 2002).

19 "When, as here, the insurer is providing a defense but merely

20 refuses to settle, the insured has no immediate remedy.  A cause of

21 action for bad faith refusal to settle arises only after a judgment

22 has been rendered in excess of the policy limits." <u>Safeco Ins. Co.</u>

23 <u>v. Super. Ct.</u>, 71 Cal. App. 4th 782, 788 (Cal. Ct. App. 1999).  The

24 rationale of this rule applies to both American Home, as primary

25 insurer, and National, as excess insurer: if there could be a

26 breach of the duty to settle prior to an excess judgment, insureds

27 could simply sue their insurers for breach of that duty, then

28 potentially obtain a settlement or judgment within the primary

**United States District Court**
For the Northern District of California

1  insurance layer and suffer no cognizable damages.  <u>See</u>

2  <u>LensCrafters, Inc. v. Liberty Mut. Fire Ins. Co.</u>, No. C 07-2853

3  SBA, 2008 WL 410243, at *4 (N.D. Cal. Feb. 12, 2008).

4        Sometimes, as Plaintiffs note, an insured can bring a claim

5  based on an insurer's refusal to settle before an excess judgment

6  has been entered, but only when the insured has suffered damages

7  beyond exposure to a risk of liability in excess of policy limits

8  (e.g., damage to business reputation).  <u>See</u> Opp'n at 10-14.

9  However, Plaintiffs' pleadings and arguments in favor of the

10 Court's granting them this exception are conclusory and therefore

11 insufficient to survive Defendants' motion to dismiss.  <u>Iqbal</u>, 556

12 U.S. at 678; <u>see also</u> <u>Swinerton Builders</u>, 2013 WL 1122022, at *2

13 (N.D. Cal. Mar. 15, 2013) (finding same).  No judgment has been

14 entered in the underlying case.  Accordingly, Plaintiffs' claims

15 based on Defendants' alleged breaches of the duty to settle are all

16 DISMISSED as unripe.

17       Defendants also argue that all of Plaintiffs' claims based on

18 alleged overpayment of their deductible are unripe, because the CGL

19 Policy explicitly states that American Home's obligation to

20 indemnify Plaintiffs for damages only applies in excess of the CGL

21 Policy Schedule's stated deductible amounts.  Mot. at 10-11; CGL

22 Policy at 36-37.  According to Defendants, deductible amounts

23 cannot be calculated until the duty to indemnify attaches, i.e.,

24 after the case resolves and covered damages are determined -- a

25 matter distinct from the duty to defend.  Mot. at 11.  Therefore,

26 Defendants conclude that Plaintiffs' deductible-based claims are

27 unripe, just as their claims for breach of the duty to settle are.

28 <u>Id.</u>  However, as this Court found in the parties' parallel case,

the parties' dispute over deductibles does not concern Defendants'
duty to indemnify Plaintiffs for an undetermined amount: Plaintiffs
have alleged that they have satisfied their $100,000 deductible and
are due reimbursement of the excess payments.  See Compl. ¶ 53(f);
Swinerton Builders, 2013 WL 1122022, at *3.  Therefore Plaintiffs'
claims based on the deductible dispute are ripe.  The next issue is
accordingly whether an arbitration agreement governs the parties'
dispute over deductibles.

**B.    Arbitration**

The Policies themselves have no arbitration clause.
Underlying the parties' dispute over whether arbitration is
required in this case is a Letter of Understanding that Plaintiffs
and National entered on August 2009, to outline the process
Plaintiffs and National would follow to resolve outstanding
insurance-related disputes "associated with the 3/31/00 - 3/31/05
Rolling Contractor Controlled Insurance Program (Swinerton Wrap
Up)."  ECF No. 32 ("Derewitz Decl. ISO Mot.") Ex. B ("LOU").  The
parties do not explain what exactly the Swinerton Wrap Up is.  The
LOU also contains an agreement between the parties to arbitrate
"any dispute between the Parties with reference to the
interpretation, application, formation, enforcement or validity of
this memorandum, or their right with respect to any transaction
involved, whether such dispute arose before or after the
termination of this memorandum."  LOU at 1.

Plaintiffs deny that the LOU covers their dispute over the
deductible.  They ask the Court to admit and consider extrinsic
evidence of a Payment Agreement and the supplemental and original
declarations of John Capener, which Plaintiffs contend will clarify

**United States District Court**
For the Northern District of California

1   that the LOU is irrelevant in this case.  <u>See</u> Opp'n at 14-18; ECF

2   No. 39-1 ("Fanning Decl.") Exs. 1 ("Suppl. Capener Decl. & Payment

3   Agreement), 2 ("Capener Decl.").  The Payment Agreement is an

4   unexecuted contract from March 2000 between the parties that

5   contains an arbitration clause governing deductibles, which

6   Plaintiffs state would have covered the present dispute if it had

7   been signed.  Opp'n at 16-17; Suppl. Capener Decl. at 2.  Both

8   Capener Declarations state that Mr. Capener, Swinerton

9   Incorporated's Senior Vice President and Director of Risk Services,

10  refused to sign agreements like the Payment Agreement, which

11  governed deductibles to be charged to Plaintiffs.  Suppl. Capener

12  Decl. at 2; Capener Decl. at 2-3.  Plaintiffs also argue that the

13  LOU identifies five specific transactions, which do not include

14  deductible disputes.  Capener Decl. ¶¶ 6-7.

15      In response to all of these arguments, Defendants offer the

16  declaration of Stephen Lidz, who in the summer of 2009 was the

17  Senior Vice President of the Construction Risk Management division

18  responsible for Plaintiffs' primary insurance programs, including

19  the Swinerton Wrap Up program.  ECF No. 35 Ex. A. ("Lidz Decl.") ¶

20  1.  Mr. Lidz states that the LOU was meant to apply broadly to

21  Plaintiffs' "obligation to reimburse and fund future paid losses

22  within the program deductible."  <u>Id.</u> ¶ 8.  Defendants conclude that

23  the FAA's presumption in favor of arbitration, Mr. Lidz's

24  interpretation of the LOU, and the disputed admissibility of

25  Plaintiffs' evidence count in favor of arbitration here.  Reply at

26  8-12.

27      The Court finds no reason to depart from the rulings on this

28  issue in the Essex Action.  There, this Court found that the LOU

United States District Court
For the Northern District of California

explicitly provides for the arbitration of the question of arbitrability -- a threshold dispute here.  <u>Swinerton Builders</u>, 2013 WL 2237885, at *4-6.  Nothing has changed since then. Plaintiffs' disputed evidence is not persuasive, and the LOU's language sends to the arbitrators the questions of both the LOU's coverage and the parties' dispute over arbitration.

Apart from their above arguments on the LOU's scope and interpretation, Plaintiffs retain their arguments that bad faith claims are not arbitrable.  Opp'n at 23-24.  Plaintiffs cite several cases in support of this argument, but these cases are inapposite because they were either limited to their facts or simply not supportive of Plaintiffs' arguments.  Opp'n at 23-24. No other arguments remain.

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

**United States District Court**
For the Northern District of California

1    V.    <u>CONCLUSION</u>

2         As explained above, Plaintiffs Swinerton Builders and

3    Swinerton Incorporated's claims premised on Defendants American

4    Home Assurance Co. and National Union Fire Insurance Co.'s alleged

5    breach of the duty to settle are DISMISSED.  The Court GRANTS

6    Defendant's motion to stay this action pending the completion of

7    arbitration, and COMPELS the parties to proceed with arbitration in

8    accordance with the Letter of Understanding.  This case is STAYED

9    pending the outcome of that arbitration.

10        The Court DENIES Plaintiffs' request to amend their complaint,

11   because Plaintiffs do not specify what new facts they could allege

12   to cure the defects that warranted dismissal.  <u>See</u> Opp'n at 24-25.

13

14        IT IS SO ORDERED.

15

16   Dated: July __23__, 2013

17                                      UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

27

28

11